UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------  x
J & J SPORTS PRODUCTIONS, INC.,

        Plaintiff,

    -against-

SPENCER CINEUS, Individually and d/b/a
CITADELLE BAR & RESTAURANT aka
CITADELLE LOUNGE; and CITADELLE
INCORPORATED, an unknown entity d/b/a
CITADELLE BAR & RESTAURANT aka
CITDELLE LOUNGE,

        Defendants.
-----------------------------------------------------------  x

**REPORT AND RECOMMENDATION**
18-CV-5109 (AMD)(PK)

**Peggy Kuo, United States Magistrate Judge:**

    On September 11, 2018, J & J Sports Productions, Inc. ("Plaintiff") brought this action against Citadelle Incorporated ("Citadelle"), a business entity that did business as Citadelle Bar & Restaurant aka Citadelle Lounge, and Spencer Cineus (together with Citadelle, "Defendants"). Plaintiff alleges that Defendants violated the Federal Communications Act of 1934, 47 U.S.C. § 151 *et seq.* ("FCA"), by broadcasting a boxing match without paying the requisite sublicensing fee.

    Before the undersigned on referral from the Honorable Judge Ann M. Donnelly is Plaintiff's Motion for Default Judgement ("Motion," Dkt. 24). For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted. In addition, the undersigned recommends that Plaintiff be allowed to move for attorneys' fees within thirty days of the adoption of this report and recommendation.

### FACTUAL BACKGROUND

    The following facts are taken from the Amended Complaint (Am. Compl., Dkt. 16), the affidavit of Plaintiff's president, Joseph M. Gagliardi ("Gagliardi Aff.," Dkt. 24-3), Plaintiff's

Memorandum in Support of Application for Default Judgement ("Pl.'s Mem.," Dkt. 24-2), the Closed Circuit Television License Agreement between Plaintiff and Mayweather Promotions ("License Agreement," Dkt. 24-3, Ex. 1), the affidavit of Abdul Kabba ("Kabba Aff.," Dkt. 24-1, Ex. 5; *see also* Dkt. 24-1 ¶ 16), and an image taken from Citadelle Lounge's Facebook page. (Dkt. 24-1, Ex. 5; *see also* Dkt. 24-1 ¶ 16).

On September 12, 2015, Plaintiff, a California corporation, entered into the License Agreement with Mayweather Promotions. (Am. Compl. ¶¶ 6, 19; Gagliardi Aff. ¶ 3; License Agreement.) Pursuant to the Agreement's terms, Plaintiff had "the exclusive license to exhibit" the Floyd Mayweather vs. Andre Berto fight, which was displayed on September 12, 2015, "and the accompanying undercard bouts" (collectively, "Program"). (License Agreement at 1; *see also* Am. Compl. ¶ 19; Gagliardi Aff. ¶¶ 3, 7.) Plaintiff, in turn, "entered into subsequent sublicensing agreements with various commercial entities throughout North America, including entities within the State of New York."[1] (Am. Compl. ¶ 20.) "[I]n exchange for a fee," the sublicensing agreements gave the commercial entities "the rights to publicly exhibit the Program within their respective commercial establishments." (*Id.* ¶¶ 20, 22; *see also* Gagliardi Aff. ¶ 8.)

The Program's broadcast "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal." (Am. Compl. ¶ 24; *see also* Gagliardi Aff. ¶ 11.) This transmission "was electronically coded or 'scrambled.'" (Am. Compl. ¶ 24; *see also* Gagliardi Aff. ¶ 11.) There are two ways for an establishment with a valid sublicensing agreement to decode the transmission. First, the establishment can be "provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal." (Am. Compl. ¶ 25; *see also* Gagliardi Aff.

---

[1] In the Amended Complaint, Plaintiff states that it "was granted the exclusive nationwide commercial distribution (closed-circuit) rights to" the Program (Am. Compl. ¶ 19) although the License Agreement states that Clark County, Nevada was "'blacked out' unless [Plaintiff] receive[d] written authorization" to license the Program for broadcast there. (License Agreement at 1.)

2

¶ 11.)  Second, "the establishment's satellite or cable provider would be notified to unscramble the reception of the Program for the establishment."  (Am. Compl. ¶ 25 (italics omitted); *see also* Gagliardi Aff. ¶ 11.)

Because Plaintiff "began to experience serious erosion in the sales of [its] proprietary programming to [its] commercial customers throughout the United States," it "embarked upon a nationwide program to police [its] signals for the purpose of identifying and prosecuting commercial establishments that pirate [its] programming."  (Gagliardi Aff. ¶ 5.)  As part of this policing program, Plaintiff "retained auditors and law enforcement personnel to detect and identify signal pirates."  (*Id.* ¶ 6.)  "To ensure that only locations that illegally obtained the Program were visited by the auditors, [Plaintiff] compiled [a] confidential list of customers (authorized and legal locations) who paid the required license fee to broadcast the Program, and this list was distributed to participating auditing and law enforcement agencies in strict confidence."  (*Id.*)

Defendant Spencer Cineus is the owner and principal of Citadelle Incorporated, the corporation that "owned and operated the commercial establishment doing business as Citadelle Bar & Restaurant aka Citadelle Lounge operating at 9320 Avenue L, Brooklyn NY 11236."  (Am. Compl. ¶ 9.)  "Cineus was identified by the New York State Liquor Authority as the Principal for Citadelle Incorporated on the New York State Liquor Authority License for Citadelle Incorporated" and "was the sole individual identified on the On Premises Liquor License . . . issued to Citadelle Incorporated."  (*Id.* ¶¶ 10-11.)  On information and belief, Plaintiff alleges that: Cineus "had the right and ability," as well as "the obligation," "to supervise the activities of Citadelle . . . includ[ing] the unlawful interception, receipt, and publication" of the Program.  (*Id.* ¶¶ 12-13.)  Plaintiff also alleges on information and belief that Cineus "specifically directed the employees of Citadelle . . . to unlawfully intercept, receive and broadcast" the Program (*id.* ¶ 14); "[t]he actions of the employees of Citadelle . . . are imputable to" Cineus "by virtue of his acknowledged responsibility for [its] operation" (*id.*);

3

Cineus "had an obvious and direct financial interest in" Citadelle's "activities" including "the unlawful interception, receipt and publication of Plaintiff's Program" (*id.* ¶ 15 (italics omitted)); and Cineus, "as the Owner and Principal of Citadelle Incorporated[,] was a moving and active conscious force behind the operation, advertising and promotion of Citadelle . . . , and is responsible for all activities that occurred therein, which included the unlawful interception and exhibition of Plaintiff's Program" (*id.* ¶ 17 (italics omitted)).

On September 9, 2015, Citadelle advertised the Program on its "Citadelle Bar Lounge" Facebook page. (Dkt. 24-1, Ex. 5; *see also* Dkt. 24-1 ¶ 16.) The ad, which included an image of Mayweather and Berto, stated that Citadelle Lounge's doors would open at 8:30 p.m. and that admission was ten dollars. (Dkt. 24-1, Ex. 5.)

Abdul Kabba, an investigator with Taylor & Associates Investigative Agency, submitted an affidavit stating that on September 12, 2015, he paid ten dollars to enter Citadelle Lounge, where he saw the Program playing on two televisions. (Kabba Aff.) While there, Kabba did three separate head counts, counting 35, 44, and 50 people respectively. (*Id.*) Although "[t]here was no max capacity sign visible to" Kabba, he estimated that Citadelle "could hold about 100+ people." (*Id.*)

Citadelle never lawfully obtained a license from Plaintiff to exhibit the Program. (Gagliardi Aff. ¶ 7.) "The commercial sublicensing fee" for an establishment of Citadelle's size, with a capacity of up to one hundred people, was $2,000 (*id.* ¶ 8; *see also* Rate Card for the Program, Gagliardi Aff., Ex. 2), which Defendants did not pay (Am. Compl. ¶ 28).

## PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on September 11, 2018. (Dkt. 1.) Plaintiff served the Complaint on Citadelle and Cineus on September 24, 2018 and November 20, 2018, respectively. (Dkts. 5, 6.) Plaintiff requested certificates of default for both Defendants on December 21, 2018 (Dkt. 8), which were entered by the Clerk of Court on December 27, 2018 (Dkt. 9). Plaintiff filed a motion for default

4

judgment on February 22, 2019 (Dkt 10), which it withdrew on September 10, 2019 (Dkt 14), after the Court questioned its failure to specify whether the Program was transmitted via cable pursuant to 47 U.S.C. § 553, or wire or radio pursuant to 47 U.S.C. § 605.  (Order dated Sept. 10, 2019.)

Plaintiff filed the Amended Complaint on October 15, 2019 (Dkt 16), which it served on Citadelle and Cineus on October 22, 2019 and October 28, 2019, respectively (Dkts. 17, 18).  Plaintiff requested certificates of default for both Defendants on December 11, 2019 (Dkt. 19), which the Clerk of Court entered on December 17, 2019 (Dkt. 21).  Plaintiff filed the Motion on May 1, 2020. (Dkt. 24.)

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process regarding default judgment.  First, the Clerk of the Court enters a party's default when a defendant "has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  Then, the plaintiff can apply to the court for a default judgment.  Fed. R. Civ. P. 55(b)(2).  "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right."  *Guideone Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

Before a court grants a motion for default judgment, the court may, but is not required to, adjudicate personal jurisdiction.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (leaving "open the question whether a district court *must* investigate its personal jurisdiction over a defendant before entering a default judgment" (quotation, citation, and alteration omitted))); *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant.").

Additionally, the Court must ensure that (1) the plaintiff took all the required procedural steps in moving for default judgment pursuant to Local Civil Rule 55.2(c), and (2) the plaintiff's allegations,

5

when accepted as true, establish liability as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability," *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), and the court draws all reasonable inferences in favor of the plaintiff. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Nevertheless, a default is "not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. Instead, the plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence and detailed affidavits. *See id*; *see also Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991). The amount of damages awarded, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

## DISCUSSION

### I. Procedural Compliance

To establish entitlement to default judgment, a plaintiff must demonstrate proper service of the summons and complaint. *Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 9-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). An individual may be served according to the law of the state where service is made. Fed. R. Civ. P. 4(e)(1). Likewise, a corporation may be served in the same manner for serving an individual as prescribed by Federal Rule of Civil Procedure 4(e)(1) or by delivering a copy of the summons and complaint to an officer appointed by law to receive such service. Fed. R. Civ. P. 4(h)(1).

Plaintiff served Citadelle by delivering and leaving a copy of the Summons and Amended Complaint with the Secretary of State for New York. (Dkt. 18.) This is proper service on a domestic corporation in New York. N.Y. Bus. Corp. L. § 306(b)(1); Fed. R. Civ. P. 4(h)(1)(B) (permitting service on "any other agent authorized by appointment or by law to receive service of process"). Plaintiff served Cineus by delivering two copies of the Summons and Amended Complaint with an individual

6

of suitable age and discretion at Cineus's usual place of residence and then mailing a copy of these documents to Cineus's residence. (Dkt. 17.) This is also proper service. N.Y. C.P.L.R. § 308(2); Fed. R. Civ. P. 4(e)(1). Thus, Plaintiff properly served Defendants.

As part of its Motion, Plaintiff included a memorandum of law (Dkt. 24-2, Local Civ. R. 7.1(a)(2)), a copy of the Clerk's certificate of default (Dkt. 24-1, Ex. 1, Local Civ. R. 55.2(b)(1)), a copy of the claim (Dkt. 24-1, Ex. 2, Local Civ. R. 55.2(b)(2)), proof of service of the claim (Dkt. 24-1, Ex. 4, Local Civ. R. 55.1(b)(3)), a proposed judgment (Dkt. 24-1, Ex. 3, Local Civ. R. 55.2(b)(3)), and proof of mailing the Motion to Defendants (Dkt. 24-5, Local Civ. R. 55.2(c)). Although Plaintiff did not include a notice of motion, it did include an "Application for Default Judgment by the Court." (Dk. 24.) This document satisfies the Local Civil Rules as it "specif[ies] the applicable rules or statutes pursuant to which the motion is brought" and "the relief sought by the motion." Local Civ. R. 7.1(a)(1). The Declaration of Plaintiff's Counsel in Support of Application for Default Judgment by the Court, which was made under penalty of perjury, includes the statement that Cineus is not in military service or otherwise exempted from default judgment. (Dkt. 24-1 ¶ 4.) Accordingly, Plaintiff has complied with the procedural requirements for default judgment.

## II.   Subject Matter Jurisdiction

Jurisdiction over Plaintiff's claim is proper pursuant to 28 U.S.C. § 1331.

## III.   Liability Under the FCA

In the Amended Complaint, Plaintiff alleges violations of § 605 of the FCA or, in the alternative, § 553 (Am. Compl. ¶¶ 35, 43); however, in the Motion, Plaintiff elects to recover only damages pursuant to § 605. (Pl.'s Mem. at 4.) Because Plaintiff may only recover under either § 605 or § 553, *see Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011), this report and recommendation addresses only § 605.

7

### A. *Legal Standard Under Section 605*

Section 605(a) provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the [ ] contents . . . of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication . . . for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication . . . knowing that such communication was intercepted, shall divulge or publish the [ ] contents . . . of such communication . . . or use such communication . . . for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

To state a claim under Section 605, Plaintiff must first allege that "at least part of the event's transmission was produced by satellite." *J & J Sports Prods., Inc. v. Barretta*, No. 18-CV-5111 (NG)(ST), 2019 WL 7284249, at *3 (E.D.N.Y. Sept. 10, 2019), *R&R adopted*, 2019 WL 7283284 (E.D.N.Y. Dec. 27, 2019) (quotation, citation, and alteration omitted); *see also J & J Sports Prods., Inc. v. Ferreiras*, No. 15-CV-6546, 2018 WL 6168557, at *7 (E.D.N.Y. Nov. 20, 2018), *R&R adopted in relevant part*, Dkt. Order 27 (E.D.N.Y. May 20, 2020) ("[A]ll that needs to be alleged (to state a § 605 claim) is that the communication *originated* via satellite." (emphasis in original)).

Second, the plaintiff must show that the program exclusively licensed to the plaintiff "was exhibited in a commercial establishment, one which undisputedly did not pay a licensing fee." *Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG)(SJB), 2019 WL 885930, at *3 (E.D.N.Y. Feb. 22, 2019).

### B. *Plaintiff Has Alleged a Section 605 Claim Against Citadelle*

Plaintiff has sufficiently alleged a § 605 claim against Citadelle. Plaintiff alleges that Citadelle "intercepted and/or received the satellite communication of the Program." (Am. Compl. ¶ 30; *see also* Pl.'s Mem. at 2.) This is sufficient to establish that the interception, receipt, and transmission of the Program was derived from satellite communications. Plaintiff also satisfied the second element under § 605. Plaintiff established that it had the exclusive right to exhibit the closed-circuit telecast of the

Program in a commercial establishment. (License Agreement at 1; *see also* Am. Compl. ¶ 21.) Citadelle did not pay the required fee of $2,000 to broadcast the Program. (Am. Compl. ¶ 28; *see also* Gagliardi Aff., Ex. 2.) An investigator personally observed that Citadelle showed the Program in its establishment. (Kabba Aff. at 1-2; *see also* Gagliardi Aff. ¶ 7.) *See Barretta*, 2019 WL 7284249, at *3 (finding that plaintiff made "a sufficient claim for relief against" defendant when plaintiff alleged that it had exclusive right to broadcast a particular program, defendant did not enter into a sublicensing agreement with plaintiff, and defendant exhibited the program to its patrons).

### C. Plaintiff Alleged a Section 605 Claim Against Cineus

There are two theories under which individuals may be held indirectly liable for the FCA violations of their establishments, contributory liability and vicarious liability. *See J & J Sports Prods., Inc. v. Guncay*, No. 18-CV-2097 (FB)(RML), 2018 WL 6313210, at *2 (E.D.N.Y. Oct. 17, 2018), *R&R adopted*, 2018 WL 6308773 (E.D.N.Y. Dec. 3, 2018). "To establish vicarious liability, a plaintiff must show that the defendant had a 'right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials.'" *Id.* (quoting *Softel, Inc. v. Dragon Med. & Sci. Comm'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)). "To establish contributory infringement, a plaintiff must show that the defendant 'authorized the infringing use.'" *Id.* (quoting *Softel, Inc.*, 118 F.3d at 971). Plaintiff does not specify the theory pursuant to which it seeks to hold Cineus liable. Because Plaintiff established that Cineus is vicariously liable for Citadelle's violation of § 605, the undersigned finds it unnecessary to consider also whether Plaintiff has established contributory infringement. *See id.* at *3 (considering only whether individual defendant was vicariously liable, even though plaintiff alleged both vicarious and contributory).

Plaintiff satisfied the first element of vicarious liability—*i.e.*, that Cineus had the right and ability to supervise the exploitation of the copyrighted materials—because it alleges that Cineus was identified as (1) "Owner and Principal of Citadelle Incorporated, which owned and operated the

9

commercial establishment doing business as Citadelle Bar & Restaurant" (Am. Compl. ¶ 9), (2) "the Principal for Citadelle Incorporated on the New York State Liquor Authority License for Citadelle Incorporated . . . for the commercial establishment Citadelle Bar & Restaurant," (*id.* ¶ 10), and (3) "the sole individual [ ] on the On Premises Liquor License . . . issued to Citadelle Incorporated for the commercial establishment Citadelle Bar & Restaurant" (*id.* ¶ 11). Plaintiff also alleges that, by virtue of his position as owner and principal of Citadelle Incorporated, Cineus had the right, ability, and obligation to supervise the activities that took place at Citadelle, including the broadcast of the Program. (*See id.* ¶¶ 12-13.)

As for the second element, courts consider whether the plaintiff has "show[n] direct financial gain, such as a cover charge on the night of the event," or "strong indirect evidence of financial gain, such as a bar hosting a large number of patrons, who would presumably purchase drinks during the broadcast." *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, No. 15-CV-6505 (NGG)(PK), 2016 WL 6905946, at *3 (E.D.N.Y. Nov. 23, 2016). Here, Plaintiff established that Cineus financially gained from Citadelle's showing of the Program. Citadelle advertised the Program on its "Citadelle Bar Lounge" Facebook page, which stated that admission to the establishment was ten dollars. (Dkt. 24-1, Ex. 5.) The investigator who visited Citadelle the night it showed the Program stated that he paid ten dollars to enter the establishment. (Kabba Aff. at 1.)

Accordingly, the undersigned respectfully recommends that Cineus be held vicariously liable for Citadelle's violation of § 605. *See J &J Sports Prods., Inc. v. Dowling*, No. 19-CV-2002 (LDH)(ST), 2020 WL 7249287, at *4 (E.D.N.Y. Mar. 6, 2020), *R&R adopted in relevant part*, 2020 WL 6937861 (E.D.N.Y. Nov. 25, 2020); *J & J Sports Prods., Inc. v. Mangos Steakhouse & Bakery, Inc.*, No. 13-CV-5068 (RJD)(CLP), 2014 WL 2879868, at *5 (E.D.N.Y. May 7, 2014), *R&R adopted*, 2014 WL 2879890 (E.D.N.Y. June 24, 2014).

**IV.     Damages**

Under the FCA, Plaintiff may elect to receive damages reflecting the actual amount of money lost plus defendant's profits, or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Plaintiffs may also seek enhanced damages for conduct that is willful or done for the purposes of commercial advantage or private financial gain. *Id.* § 605(e)(3)(C)(ii).

Here, Plaintiff has elected to receive statutory, rather than actual, damages; it also seeks to enhance those damages. (Pl.'s Mem. at 5.)

**A.     *Statutory Damages***

The Court has discretion to award damages within the statutory range of $1,000 to $10,000 for each violation of the FCA. 47 U.S.C. § 605(e)(3)(C)(i)(II). Although § 605 does not define "violation," courts have generally "interpreted the showing of an event on a single night as one violation." *Joe Hand Promotions, Inc. v. Kings Point Rest., Inc.*, No. 17-CV-1870 (MKB)(CLP), 2017 WL 6611705, at *4 (E.D.N.Y. Nov. 3, 2017), *R&R adopted*, 2017 WL 6611571 (E.D.N.Y. Dec. 27, 2017) (citation omitted). Here, there is a single violation of the FCA.

In similar cases, "[c]ourts in this Circuit generally award [statutory] damages based on the greater of two calculations: either the flat-fee method or the per-person method," but not both. *Barretta*, 2019 WL 7284249, at *5 (citation omitted). "Under the 'flat-fee' method, damages are equal to the amount that the defendants would have paid for authorization to broadcast the event lawfully." *Joe Hand Promotions, Inc. v. Dilone*, No. 19-CV-871 (NGG)(RML), 2020 WL 2572271, at *4 (E.D.N.Y. Jan. 23, 2020), *R&R adopted in relevant part*, 2020 WL 1242757 (E.D.N.Y. Mar. 16, 2020). This method relies on the licensing fee charged to commercial establishments. "Under the 'per-person' method, damages are equal to the amount the patrons would collectively have paid to view the event in their homes." *Id.* This method requires information about the individual residential viewing fee.

11

Plaintiff contends that basing a calculation of statutory damages on "presumed actual losses conflates two separate sections of 47 U.S.C. § 605(e)(3)(C). Statutory damages are awarded as an *alternative* to actual damages." (Pl.'s Mem. at 7 (emphasis added).) Plaintiff also argues that neither the flat-fee nor per-person method of calculating statutory damages is adequate because they both undervalue the Program and serve as an insufficient deterrent to unauthorized commercial broadcasting of its programs. (*See* Pl.'s Mem. at 6-9.) Instead, Plaintiff requests statutory damages of "$6,000, which is three times the licensing fee. Such an award is more in keeping with the purposes of the piracy statutes." (*Id.* at 8.)

Contrary to Plaintiff's assertion, basing a statutory damage award on presumed actual losses, such as a licensing fee, does not conflate the actual and statutory damages subsections of 47 U.S.C. § 605. Section 605(e)(3)(C)(i) allows the "party aggrieved" to elect either "actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages," 47 U.S.C. § 605(e)(3)(C)(i)(I); or "statutory damages for each violation of subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just," *id.* § 605(e)(3)(C)(i)(II). Because actual damages "frequently prove difficult to establish, plaintiffs generally elect to recover statutory damages instead under 47 U.S.C. § 605(e). *J & J Sports Prods., Inc. v. 291 Bar & Lounge*, 648 F. Supp. 2d 469, 474 n.3 (E.D.N.Y. 2009)

In determining a statutory damages award, "some proportionality between the loss suffered and the amount of statutory damages" is appropriate. *Kingvision Pay-Per-View, Ltd v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001). When a plaintiff does not provide precise calculations of its actual losses and a defendant's actual profits, courts award statutory damages based on approximations that seek to provide fair compensation to the plaintiff. Furthermore, when only incomplete

12

information is available, courts endeavor to estimate such losses and profits, using information that is provided.

For example, in *Kingvision*, which Plaintiff cited as an example of a court declining to use the flat-fee method (*see* Pl.'s Mem. at 6-7), the unauthorized program was broadcast in a grocery store, where approximately thirty customers gathered to watch. The court declined to use the commercial licensing fee to calculate damages in that case because the amount of such fee was $15 multiplied by the capacity of the establishment, and "[t]here is usually no information on the capacity of a grocery store, as opposed to the capacity of a restaurant." *Kingvision Pay-Per-View*, 152 F. Supp. 2d at 442. It also noted that the grocery store did not charge a cover charge, but "likely profited from the purchase of food made by each customer attracted to the store by the prospect of watching the fight." *Id.* In light of these factors, the court awarded statutory damages of $5,000, which it found to be "well in excess of the probable licensing fee and … more than the store would have made in profits on a per-customer basis."[2] *Id.*

Here, the commercial licensing fee amount is readily ascertainable. Plaintiff has submitted evidence both of Citadelle's approximate capacity—one hundred people (*see* Kabba Aff.)—and the corresponding fee Citadelle would have had to pay for the Program, $2,000 (Rate Card, Gagliardi Aff., Ex. 2; Gagliardi Aff. ¶ 8 ("The commercial sublicense fee for this establishment was $2,000."); *see also* Am. Compl. ¶ 28). Plaintiff has not provided the residential viewing fee to enable the Court to calculate the combined amount that the viewers in the Citadelle Lounge would have had to pay to

---

[2] In *J & J Sports Prods., Inc. v. Sin Fronteras Rest.*, No. 9-CV-1873 (FB)(CLP), 2010 WL 1565441 (E.D.N.Y. Feb. 23, 2010), *R&R adopted*, 2010 WL 1565297 (E.D.N.Y. Apr. 16, 2010), another case on which Plaintiff relies for this argument, the court did not award statutory damages, increase those statutory damages, and then award further enhanced damages for willfulness, as Plaintiff contends. Instead, the court first awarded $2,200 in statutory damages under § 605(e)(3)(C)(i)(II)—which it calculated using the flat-fee method, *see id.* at *7 (explaining that $2,200 is "the fee that would normally be charged to a commercial establishment with a capacity of 25 persons," which was the defendant's capacity)—and *then* awarded enhanced damages of $3,000 under § 605(e)(3)(C)(ii) for willful conduct. *See id.* at *8.

13

watch in their homes. It also does not estimate the profits that Citadelle made from drinks and food sold during the event, although it does provide information that a $10 cover was charged.

The undersigned finds no reason to "deviate from the well-established practice in this District" for calculating statutory damages and adopts the flat-fee method of calculating statutory damages. *J & J Sports Prods., Inc. v. Shaw*, No. 19-CV-2383 (AMD)(ST), 2020 WL 1034361, at *5 (E.D.N.Y. Feb. 12, 2020), *R&R adopted*, 2020 WL 1031804 (E.D.N.Y. Mar. 3, 2020). This comports with other recent decisions in this circuit. *See id.* (compiling cases); *see also Barretta*, 2019 WL 7284249, at *5 ("In keeping with recent decisions in this District, this Court declines to deviate from the standard methodology used to calculate statutory damages in the Second Circuit.").[3]

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $2,000 in statutory damages.

### B. *Enhanced Damages Under Section 605(e)(3)(C)(ii)*

In addition to requesting statutory damages that are greater than the licensing fee that Citadelle should have paid, Plaintiff requests a further trebling to account for Defendants' willfulness, thus increasing the damages to $18,000. (Proposed Default J. Order, Dkt. 24-4; *see also* Pl.'s Mem. at 10, 11.)

The Court may enhance its award of damages by an amount up to $100,000 per violation if the plaintiff establishes that the violation was both "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(I)(3)(C)(ii); *see J & J Sports Prods., Inc. v. Afrikan Poetry Theatre Inc.*, No. 17-CV-2196 (ARR)(CLP), 2018 WL 2078482, at *7

---

[3] Plaintiff also contends that increasing the statutory damages to an amount greater than the licensing fee is necessary to deter wrongful conduct. (*See* Pl.'s Mem. at 6-7.) However, Plaintiff fails to acknowledge that this deterrent effect can also be achieved by enhancing the statutory damages if the defendant engages in willful misconduct. *See J & J Sports Prods. Inc. v. Tequilitas 2, Inc.*, No. 18-CV-2131 (BMC), 2019 WL 919551, at *2 (E.D.N.Y. Feb. 25, 2019) ("Imposing enhanced damages is obviously just as sufficient a deterrent measure as using a multiplier of estimated actual damages.").

(E.D.N.Y. Feb. 27, 2018), *R&R adopted*, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018). Willfulness can be established merely by the broadcast of an event without authorization. *See Dilone*, 2020 WL 2572271, at *5; *Barretta*, 2019 WL 7284249, at *6.

Courts also consider various additional factors to determine whether enhanced damages are warranted. These factors include whether the defendant has repeatedly violated the FCA, the extent of the plaintiff's actual damages, the extent of the defendant's unlawful monetary gains, whether the defendant advertised the wrongful broadcast of the event, and whether the defendant collected a cover charge or money for food and drinks from those individuals who viewed the event. *See, e.g., J & J Sports Prods., Inc. v. James*, No. 17-CV-5359 (NGG)(ST), 2018 WL 3850731, at *7 (E.D.N.Y. July 25, 2018), *R&R adopted*, 2018 WL 3848921 (E.D.N.Y. Aug. 13, 2018).

Plaintiff has shown that Citadelle exhibited the Program to its patrons without paying the commercial licensing fee. (Am. Coml. ¶ 28; *see also* Kabba Aff. at 1, 2.) This establishes willful conduct. Additionally, Plaintiff has demonstrated that Citadelle collected a $10 cover charge from approximately 50 patrons, making a profit of $500 (Kabba Aff. at 1, 2), and that Citadelle advertised the Program on its Facebook page. (Dkt. 24-1, Ex. 5.)

However, Plaintiff has not shown that enhanced damages should be awarded against Cineus. Although Plaintiff pleads that "Cineus specifically directed the employees of Citadelle Bar & Restaurant aka Citadelle Lounge to unlawfully intercept, receive and broadcast Plaintiff's Program" (Am. Compl. ¶ 14 (italics omitted)) and that he "had an obvious and direct financial interest in the activities of Citadelle Bar & Restaurant" (*id.* ¶ 15), this is not "sufficient to establish damages to a 'reasonable certainty.'" *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting *Credit Lyonnais Sec. (USA), Inc.*, 183 F.3d at 155). "Plaintiff has not established, for example, that [Cineus] was personally involved in approving the decoding of the signal or otherwise knew that the fight was being unlawfully intercepted." *J & J Sports Prods., Inc. v. Sugar Café Inc.*, No. 17-CV-5350

15

(RA), 2018 WL 324266, at *3 (S.D.N.Y. Jan. 5, 2018).  Furthermore, Plaintiff's investigator stated that he saw a woman working at Citadelle, not Cineus.  (Kabba Aff.)  *See Sugar Café Inc.*, 2018 WL 324266, at *3 (finding that plaintiff did not put forward a sufficient evidentiary basis to award enhanced damages against individual defendant because, *inter alia*, the "investigator's affidavit identifies only an 'Unknown Hispanic Female' as a waitress working at" defendant café that night and not individual defendant (citation omitted)).

Accordingly, the undersigned respectfully recommends enhanced damages only against Citadelle in the amount of $4,000, which is twice the amount that the undersigned recommends awarding for statutory damages, in effect trebling the damages against the corporate Defendant.  *See James*, 2018 WL 3850731, at *8.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Motion be granted as to Citadelle and Cineus.  The undersigned further respectfully recommends that Plaintiff be awarded $2,000 in statutory damages, for which both Defendants are jointly and severally liable., and $4,000 in enhanced damages, for which only Citadelle is liable.

Additionally, the undersigned respectfully recommends that Plaintiff be given thirty days to file a motion with its request for attorneys' fees and costs.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
February 2, 2021

17